## UNITED STATES v. HARRIS et al.
### No. 189, Docket 20489.

Circuit Court of Appeals, Second Circuit.
April 3, 1947.

Louis Halle, of New York City (Louis Halle and Edward Halle, both of New York City, of counsel), for defendants-appellants.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner and John C. Hilly, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

508

AUGUSTUS N. HAND, Circuit Judge.

The defendants were indicted (1) for a conspiracy to transport in interstate commerce stolen goods of a value of over $5,000, (2) for conspiring to possess goods which were stolen while moving in interstate commerce, and (3) for unlawfully possessing goods stolen in interstate commerce. The charges in the indictments related to certain cases of coffee which were stored at a garage operated by the defendants at 529 West Street, in the Borough of Manhattan, New York. At the time of arraignment, the defendants pleaded not guilty but thereafter withdrew that plea and, on April 1, 1946, pleaded guilty before Judge Leamy, under the advice of their attorney Thomas J. Ryan. Thereafter, on August 21, 1946, they were brought before Judge Holtzoff—who at that time was sitting in the Southern District of New York —for sentence. He sentenced Samuel Harris under indictment No. 3 supra to a term of four years imprisonment for unlawfully possessing goods stolen in interstate commerce, and Morris Harris to two years imprisonment for the same offense. Sentence for conspiracy charged under indictments 1 and 2 was suspended and each defendant was placed on probation for one year, to follow his term of imprisonment.

At the time of sentence, Mr. Ryan stated that the defendants did not know that the merchandise was stolen when it was taken into their garage, and when they later learned that it had been stolen they were threatened with death by their co-conspirators. But he added that he believed the issues involved in that defense of duress would be decided adversely to them by a jury and, therefore, limited his argument to plea for mitigation of sentence. Judge Holtzoff declined to regard the suggested defenses inasmuch as the plea of guilty then stood and, indeed, Mr. Ryan made no attempt to have it withdrawn as he apparently thought a trial would result in conviction by a jury.

On August 29, 1946, Judge Holtzoff, upon affidavits filed by the wives of the above defendants, directed the United States Attorney to show cause why the sentences should not be reduced, or why in the alternative the defendants should not be permitted to withdraw their pleas of guilty and to stand trial. The affidavits were to the effect that the defendants had informed their wives that they did not know the goods were stolen when taken into the garage, that they only pleaded guilty because of the advice of their attorney and because a recommendation of a very light or suspended sentence had been promised by the United States Attorney—a promise which he did not abide by. These affidavits were answered by the affidavit of Assistant United States Attorney Hilly who stated that an alleged confederate Marabini had made a written statement to the F. B. I. that he had arranged with the defendants to use their garage to store stolen merchandise and that the coffee stored there was hijacked and stored under that arrangement.

Upon the hearing of the motions by the wives, Louis B. Adler appeared for the defendants as a second attorney. At that hearing there was evidence that the defendants had used a disinfectant to rid their garage of a smell of coffee so that they would not be suspected and that they had paid $100 to the police to keep quiet when they learned that the police knew that the stored coffee had been stolen. Mr. Adler said he would not have advised pleas of guilty and that he did not believe there was any statement made by the government to the Harrises as to what the sentences would be. He also argued that the defendants claimed to have leased a space in their garage to the hijackers without guilty knowledge and that, as a matter of law, they did not have possession of the stolen goods.

Judge Holtzoff denied the motion as set forth in the margin.[1] He made an order to that effect August 30, 1946.

---

[1] "There are only two arguments, as the Court sees it, made in support of this application. First, that the defendants expected a much lighter sentence than that which was actually imposed. That is not a manifest injustice which would justify the granting of leave to withdraw a plea of guilty. Every defendant expects, generally expects, a lesser sentence than he receives. Many defendants are too optimistic and are disappointed in the end.

On October 21, 1946, the defendants moved to set aside the sentences and to withdraw their pleas of guilty upon personal affidavits stating (1) that they had rented a space in their garage to the truckmen who brought the load of coffee there, and had not known it was stolen until some time after its arrival; (2) that they had only pleaded guilty because they were advised by their attorney Ryan that they had no defense to the charges against them. These affidavits were answered by Assistant United States Attorney Hilly by submitting copies of the former proceedings before Judge Holtzoff.

The motions of October 21, 1946, came on for hearing before Judge Rifkind, and a third attorney, Louis Halle, appeared for them and argued that the former motions were principally based on the claim that the sentences were too severe and should be modified, and that the motion to withdraw their pleas and go to trial on the merits was not seriously urged. Mr. Halle vigorously argued for this last relief. The defendants themselves made no affidavits that they had been coerced into pleading guilty and rested their case on erroneous advice and excessive sentences. Judge Rifkind denied their motions as follows:

"I have listened to the quotations from some of the affidavits, and I have read your affidavits. If I were impressed with the fact that an injustice had been done, that these defendants were indeed innocent, or that they were really vehemently protesting their innocence, then perhaps I might forget the lapse and allow you to withdraw the plea but at best, at very best, I find not an outright claim of innocence but a declaration that possibly there is a technical defense because of the character of the arrangement which you say took place between the defendants and the district attorney. Well, I am not impressed with it. As a juror I would not be impressed with it, and as a judge I am not impressed with it. I am sure that all counsel who have participated in this case were not impressed with it.

"In other words, I am not now commenting upon the gravity nor the leniency of the sentence. That is not within my province, nor do I have the information to enable me to form an accurate conclusion, but as far as the plea of guilty itself is concerned, I have not any doubt but that justice has been done.

"Under those circumstances, I think it would be playing with the law to allow, at this late date, the withdrawal of the plea of guilty. I think the defendants have had their day in court. They may have expected a sentence lighter than that imposed, but that is something which frequently befalls the wrongdoers, but I am not persuaded that they have a valid cause to complain of the conviction."

We think Judge Rifkind was clearly right. The defendants' first attorney was justified in considering the probability of the success of such a defense as coercion in connection with the concealment of the odor of the coffee by the use of disinfect-

---

"The second argument of the present counsel, * * * claims that had he been retained in this case originally he would have advised the defendants to plead not guilty. That may well be. but the defendants were represented by competent counsel, who stated in open court that he advised his clients to plead guilty. He reviewed the defendants' connection, and described that the defendants were equally guilty of a participation in this huge hijacking conspiracy.

"The argument advanced by defendants' counsel in support of his contention that he may have succeeded in securing an acquittal is a highly technical one.

"The Court would gladly grant a motion for leave to withdraw a plea of guilty if it felt that an actual injustice had been done in this case. * * * The Court sees the lack of any injustice at all.

"Therefore the motion for leave to withdraw the plea of guilty will be denied.

"Passing now to the second aspect of the motion, namely, the motion to reduce the sentence, * * * In some cases this Court has followed such recommendations and in others it has not. The fact that the Court accepted the recommendation of the United States attorney redounded to the benefit of all of the defendants. If there had been no recommendations, and if I had been sitting in my own jurisdiction, the * * * sentences would have been much more severe than those which actually were imposed."

ants. Mr. Adler, the second attorney, who appeared in support of the affidavits by the wives, was justified in largely limiting his efforts to a reduction of the sentences and suggesting as questions of law the point whether the defendants were in possession of the coffee. Neither he nor the court apparently regarded either coercion or the question of possession as serious enough points to warrant permission to withdraw their pleas. Their admitted attempt to destroy the odor of coffee by disinfectants was certainly a badge of guilt and the claim of coercion was never made before Judge Rifkind and was never supported by their own oath. Rule 32(d) of the Rules of Criminal Procedure, 18 U.S.C.A. following section 687, permits withdrawal of a plea before sentence or later on a showing of manifest injustice. Here the pleas entered April 1, 1946, were unchallenged by defendants for many months and no serious attempt to withdraw them was made until the motion of October 21, 1946, by their third attorney. Their various claims were repeatedly considered and no injustice was involved in denying them the third time.

The motions were addressed to the court's discretion which was painstakingly exercised by two different judges on three separate occasions. There clearly was no abuse of discretion. United States v. Mignogna, 2 Cir., 157 F.2d 839.

The order is affirmed.