Lawrence D'ALLESANDRO,
Petitioner-Appellee,

v.

UNITED STATES of America,
Respondent-Appellant.

No. 797, Docket 74–2682.

United States Court of Appeals,
Second Circuit.

Argued April 7, 1975.

Decided May 1, 1975.

Edward R. Korman, Chief Asst. U. S. Atty. (David G. Trager, U. S. Atty., Eastern District of New York, and Stephen M. Behar, Asst. U. S. Atty., of counsel), for respondent-appellant.

Gerald L. Shargel, New York City (LaRossa, Shargel & Fischetti, New York City, of counsel), for petitioner-appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.*

FRIENDLY, Circuit Judge:

Rule 35 of the Federal Rules of Criminal Procedure empowers a district judge to reduce a sentence within, but only within, 120 days after sentence was imposed.[1] Thereafter release from a stated term of imprisonment is in the hands of the Board of Parole, 18 U.S.C. § 4201 et seq. The United States contends that in this case the district judge has, in effect, taken over functions belonging to the Board. We agree, and reverse the judgment appealed from.

Appellee Lawrence D'Allesandro was one of six defendants charged in a multi-count indictment filed on August 16, 1972, in the District Court for the Eastern District of New York. D'Allesandro was named in three counts charging distribution of heroin in violation of 21 U.S.C. § 841(a)(1), a count charging conspiracy to do so, 21 U.S.C. § 846, and another count charging perjury before a federal grand jury in violation of 18 U.S.C. § 1623. D'Allesandro's mother, Lucy D'Allesandro, was named in the conspiracy count and was the subject of two perjury counts. On October 30, 1972, the case against the D'Allesandros and James Torturo was called for trial before Judge Weinstein; the D'Allesandros were represented by James LaRossa, an experienced attorney. After some preliminary sparring, a recess was taken. At the conclusion of this Mr. LaRossa advised the court that Lawrence desired to withdraw his plea of not guilty and to plead guilty to one of the heroin distribution counts and that he had made this decision as a result of certain promises which counsel desired to "spread out on the record". These were:

> First, that the defendant Lucy D'Allesandra [sic] will be dismissed from this indictment, with prejudice, that all remaining counts in the indictment will be dismissed at the time of sentence, that a complaint that was filed within the past two weeks against the defendant before the Commissioner in this district, charging him with an attempt to influence the testimony of a witness in this case, that the complaint and any action thereunder, will be dismissed, with prejudice, against the defendant Lawrence D'Allesandro, Jr.

Assistant United States Attorney Behar indicated the Government's assent.

Judge Weinstein then addressed D'Allesandro personally, as required by F.R. Crim.P. 11. The interrogation of both D'Allesandro and his attorney was especially thorough, due no doubt to the

---

* Of the District Court for the Southern District of New York, sitting by designation.

1. The Rule has other provisions, not here relevant, concerning a sentence reduction in the event of an appeal, "illegal sentences," "sentences imposed in an illegal manner," and probation revocation.

judge's concern that D'Allesandro might be pleading guilty to a crime he had not committed in order to secure the dismissal of the counts against his mother. The judge insisted that D'Allesandro not only admit his guilt on the count to which he was pleading but that he tell in his own words what he had done. After asking both the prosecutor and defense counsel whether there was any further inquiry he should make, the judge thought of one, as follows:

> The Court: Are you making this plea because you think you are guilty or because you want to get your mother off?

> The Defendant D'Allesandro: Not because of that, because I am guilty.

> The Court: Are you guilty or what?

> The Defendant D'Allesandro: Yes, your Honor.

He then asked Mrs. D'Allesandro "may I see you up here?" The two lawyers made known that, apart from the plea bargain, the Government had planned to ask dismissal of the conspiracy count as against her. She said she did not understand why her son was pleading guilty. When the judge asked whether she had herself participated in or knew anything about the heroin sale to which Lawrence was pleading guilty, he received a negative response. The transcript continues:

The Court: All right. I will read the count to you:

"On or about the 16th day of February, 1972 within the Eastern District of New York, the defendant Gary Manfre and the defendant Lawrence D'Allesandro, Jr. and the defendant James Torturo did knowingly and intentionally distribute approximately one ounce of heroin, a Schedule I narcotic drug controlled substance."

How do you plead, guilty or not guilty?

Mrs. D'Allesandro: Guilty.

The Court: All right. I accept the plea.

Note will be taken of the surprising reference to Mrs. D'Allesandro rather than the defendant.

There ensued a discussion of the time necessary for working up a probation report and a tentative sentencing date was set. After the court took a bargained guilty plea from the remaining defendant, Torturo, there was an argument of a motion by the Government to remand Lawrence and Torturo pending sentencing. In the course of this Judge Weinstein noted

> Lawrence D'Allesandro is here and he pleaded guilty and James Torturo is here and he pleaded guilty. . . .

The judge denied the motion but addressed the two defendants as stated in the margin.[2]

2.  I think in view of the fact they have been appearing as required, and in view of the relationship which I have observed with the mother and wife and the child—with the children—well, I am going to continue the bail at a very substantial amount—you understand, gentlemen, that your activities during the next month will be closely scrutinized so that if you do anything untoward, you will get the whole fifteen years.
  Defendant D'Allesandro: Yes, your Honor.
  The Court: You will probably get a substantial sentence anyway, but there will be no mercy on you, and in addition you will be in for bail-jumping—what is the penalty?
  Mr. LaRossa: Five years.
  Mr. Behar: Five years.
  The Court: You will get that five years on top, plus the fact—
  Defendant D'Allesandro: I understand.

The Court: Plus the fact that I will consider that the promises that have been made to you may not have to be fulfilled, that is the Government's, and I will allow you to withdraw your plea of guilty and go ahead with the whole trial.
  Is that clear?
  Defendant D'Allesandro: Yes, you Honor.
  The Court: So I don't suggest that you do anything foolish.
  Do you have any questions?
  Mr. LaRossa: Just one.
  The Court: Well, maintain the same reporting schedule for the next month.
  Mr. LaRossa: Mr. D'Allesandro wants to go into the hospital, assuming we give the United States Attorney some advance notice, that is the doctor's name and the hospital,

On December 1, 1972, Judge Weinstein entered a judgment of conviction against D'Allesandro on the one count to which he had pleaded guilty and sentenced him to imprisonment for four years, a special parole term of three years and a fine of $10,000. The four other counts against him, the three counts against his mother, and the complaint charging him with threatening the life of a witness were dismissed. On April 10, 1973, the judge denied a timely motion under F.R. Crim.P. 35 to reduce the sentence.

On July 3, 1974, some 19 months after the imposition of sentence, D'Allesandro, from the federal prison at Danbury, Connecticut, wrote a letter to the judge, "with the hope and expectation that you treat it as a formal Motion 2255, to vacate my sentence, or offer me whatever relief the Court may deem necessary." He enclosed nine pages of the transcript of the proceedings on October 30, 1972, on which certain passages had been marked. He wished to bring to the judge's attention two points both based on the stenographer's insertion of "Mrs." in front of "D'Allesandro" in the above-quoted reply immediately after the court's reading of the count. His first point was "that I never plead guilty to the crime which I'm now incarcerated for." The second was that, despite the Government's promises for dismissal, "my Mother was made to plead guilty to the indictment as it applied to her"; since the Government "failed to uphold the *promise* that was made to me . ., I now wish to withdraw my plea. . ." The letter went on to complain that, despite a recommendation in favor of parole from the judge, a perfect institutional record, no past history of criminal behavior (a questionable assertion in view of what we can glean about the contents of the probation report from the transcript of the sentencing hearing), and a numerical score on the "offender

can we then overcome that signing in during the period?

The Court: Oh, yes, sure.

Yes, the Government can check by phone call.

Anything further, gentlemen?

characteristic (salient factor) guideline" (part of a program recently established in the Northeast Region of the United States Board of Parole to promote a more consistent and equitable exercise of parole boards' discretion, see 28 C.F.R., Ch. 1, Pt. 2, § 2.20 (1974)) suggesting a customary range of confinement of 16 to 20 months, he had been denied parole and had been "given a C.T.E. (continue to expiration)" of his term of imprisonment.

Promptly upon receiving D'Allesandro's letter and the accompanying papers, the judge entered an order instructing the clerk to treat them as a civil action to set aside the conviction and to serve a copy of the papers and the order upon the United States Attorney and Mr. LaRossa, and directing the United States Attorney to make an appropriate investigation and to report to the court in writing. This report, by the Assistant United States Attorney who had attended the taking of the plea on October 30, 1972, informed the court, among other things, that the statement "guilty" made at the taking of the plea was D'Allesandro's, not his mother's; that the records of the clerk so indicated; that the court reporter had informed the Assistant that his original stenographic notes did not include the reference to "Mrs." at that point; and that the Government had honored its promise in dismissing all charges against Lucy D'Allesandro. The court thereupon directed a hearing.

At the hearing on November 12, 1974, at which D'Allesandro was again represented by Mr. LaRossa, D'Allesandro called the court's attention to the same passage in the minutes to which he had referred in his letter. The transcript then proceeds as follows:

The Court: Yes. I know, but you remember what happened in this case,

Mr. LaRossa: No sir.

Mr. Fischetti: No sir.

The Court: Thank you very much, gentlemen.

Mr. Behar: Thank you, your Honor.

I had had a long colloquy with you in order to determine whether you were guilty. And that long colloquy ended on Page 25 and you agreed through all that preliminary colloquy that you were guilty. I called your mother up because of your age and because she had been charged in a related matter. To ask her whether she understood what was going on here with her son.

Then, I turned to you and addressed you. I will read the count to you and I addressed you, not your mother.

Now, I don't know why the reporter has Mrs. D'Allesandro pleading guilty. Are you telling me you didn't say it?

The Defendant: In all honesty, I can't remember.

The Court: Where is the mother? Bring her up here and swear her in. Who is the reporter here?

Mr. Behar: On that date, your Honor, Mr. Karr started the proceeding, but I had spoken to both court reporters. I believe Mr. Miele was the court reporter.

The Court: Does he have his notes?

Mr. Behar: I spoke to Mr. Miele about his notes on the matter and he told me he reviewed his notes and his notes reflect neither a Mr. or Mrs. at that point for the symbol. The reason he would not, he told me his usual practice is not to take that kind of information down. The notes were cryptic enough it would just be D'Allesandro.

The Court: Get Mrs. D'Allesandro up, the witness doesn't remember.[3]

Mrs. D'Allesandro was also unable to remember anything. D'Allesandro waived his right to have the reporter testify.[4]

Mr. LaRossa could not recall the details "any more than I do of any other case that I have handled."[5] Apparently sensing that the judge was about to dismiss the petition, he stated that he thought "Mr. D'Allesandro most probably [has] taken the position that he's taken here because of problems that we're having with prison authorities," who had "aborted" the judge's recommendation. After discussion the judge noted that, "[i]n effect, you're asking me to reduce the sentence," action for which, as he had earlier said, the time had expired. He then excused himself briefly to conduct a naturalization proceeding.

When the judge returned, there was further discussion, both about whether the judge could have pronounced a sentence that would have worked out more favorably for D'Allesandro with the Board of Parole (under 18 U.S.C. § 4208(a)), about events at the sentencing hearing, and about the taking of the plea. The Assistant United States Attorney stated that the court clerk had recorded that D'Allesandro had pleaded guilty, which the clerk confirmed, and that he (the Assistant) had made a similar record. There was more discussion of the sentence, the judge's lack of authority to modify it, the Parole Board's alleged intransigence, the needs of D'Allesandro's family, and the merits of his application for parole. At this point the judge stated that

in view, however, of the serious question about the validity of the plea and the confusion which may have been engendered in the mind of the defendant, and the mind of his mother, the defendant is to have his plea set aside and the Court will entertain an appli-

---

**3.** At this point the judge again recited that "I remember the case very well. I remember you and I remember your mother."

**4.** The Government later submitted an affidavit by the reporter confirming the statement by the Assistant United States Attorney. The reporter believed that "[t]he inclusion of the word 'Mrs' before D'Allesandro at that point in the transcript was probably the result of an error by the typist apparently caused by the fact that Mrs. D'Allesandro had been referred

to as answering the previous question posed by Judge Weinstein."

**5.** Counsel's memory had been clear enough when, many months earlier, he signed an affidavit in support of the motion for reduction of the sentence under Rule 35, saying without equivocation that "[t]he defendant, Lawrence D'Allesandro, pleaded guilty to a violation of Title 21, United States Code, Section 841(a)(1) . . . ." and as a consequence was sentenced on December 1, 1972.

cation now, if he wishes to consider repleading.

Quickly responding to the suggestion, Mr. LaRossa moved to "withdraw the plea of not guilty," which had not even been entered, "and enter a plea of guilty to Count Two of the indictment". The judge went through a few questions under F.R.Crim.P. 11, incorporating by reference under stipulation by the defendant and his counsel the inquiries and answers of the prior Rule 11 examination, and ascertained that D'Allesandro was ready to be sentenced. He then said:

I sentence you to four years to serve six months with credit for time served, remaining three years and six months to be on probation with a special three-year parole term. On motion of the United States Assistant Attorney, Counts One, Three and Four and Five are dismissed.

When the obviously non-plused Assistant United States Attorney observed that he had made no such motion, defense counsel moved "to dismiss those open counts" and the court granted the motion, although in fact the counts had been dismissed on December 1, 1972. The court also declined the Assistant's request for a written opinion, instead making only an oral statement in which he said

There is a serious question about what happened on the day of sentencing. Nobody has a direct recollection. The only record we have of the reporter indicates that there was a confusion.

Clerk's minutes do indicate no confusion, but there is a serious doubt and I think in view of the serious doubt justice requires motion be granted. And I find as a matter of fact that the sentence was invalid because the plea was not properly taken.

The Government has appealed.

■ The court's statement that there was "a serious question" about what happened on the taking of the guilty

plea was wholly contrary to the fact. The proceedings had been exemplary. Actually it is immaterial whether or not D'Allesandro himself pleaded guilty. The plea may be entered by counsel. United States v. Liss, 105 F.2d 144, 145 (2 Cir. 1939); Merritt v. Hunter, 170 F.2d 739, 741 (10 Cir. 1948); Mayes v. United States, 177 F.2d 505, 507 (8 Cir. 1949); Brown v. United States, 182 F.2d 933, 934 (8 Cir. 1950); Cruzado v. People of Puerto Rico, 210 F.2d 789, 792 (1 Cir. 1954) (dictum); United States v. Cariola, 323 F.2d 180, 187 (3 Cir. 1963) (dictum); United States v. Myers, 237 F.Supp. 472, 475–76 (E.D.Pa.1965); 8 Moore, Federal Practice ¶ 11.03[2], at 11–52 (1975). What Rule 11 says is that the court shall not accept a guilty plea, whether entered by counsel or by the defendant, "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." The 1966 amendment to Rule 11 had as one of its purposes clearing up confusion in the reported cases with respect to whether the court should "address the defendant personally in the course of determining that the plea is made voluntarily" and knowledgeably, 18 U.S.C.A. F.R.Crim.P. 11, Notes of the Advisory Committee on Criminal Rules, 1966 Amendment, thereby serving to assist the district court in its determination of voluntariness and helping to produce a complete record at the time of the taking of the plea of the factors relevant with respect to this voluntariness determination, McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), but was not intended to resuscitate what, in United States v. Denniston, 89 F.2d 696, 698 (2 Cir. 1937), cert. denied, 301 U.S. 709, 57 S.Ct. 943, 81 L.Ed. 1362 (1937), we called the "technical objection" that a plea that "was entered by the attorney and not by the appellant personally . . . is of no effect."[6]

---

**6.** We spoke of this objection as one that had its roots "in ancient times when the rights of an accused were comparatively few [and] much stress was laid upon the formality of arraignment and plea" requiring that "a plea of guilty at common law had to be made by the accused himself . . . .."

■ While it would thus suffice that D'Allesandro's counsel unequivocally withdrew D'Allesandro's plea of not guilty and entered a guilty plea to the second count of the indictment, there is no need to rest decision on this ground. For it is clear that D'Allesandro did himself so plead. Judge Weinstein had read him the count to which he had agreed to plead guilty. The records of the clerk and of the Assistant United States Attorney show that he so pleaded. The court twice evidenced its clear understanding of this in the colloquy about remand which followed the taking of the plea; it did this again in its remarks at the opening of the hearing in the § 2255 proceeding. Nothing adduced at that hearing even suggested anything to the contrary. The idea that a careful judge, a seasoned defense lawyer, and a capable prosecutor should have sat by while *Mrs.* D'Allesandro, after professing confusion, had pleaded guilty to a count in which her son was named and she was not, and that D'Allesandro had not pleaded guilty as everyone had assumed then and later and as the records of the clerk and the prosecutor showed, boggles the mind. D'Allesandro himself was not willing to assert this under oath, his mother remembered nothing, and his attorney was naturally unwilling to assert that anything so preposterous had occurred, see note 5 *supra.*

Appellee argues, in effect, that the judge's finding of "confusion which may have been engendered in the mind of the defendant" and his "finding of fact" that the sentence was invalid because the plea was not properly taken are beyond challenge. We reject the argument. Society also has important interests in a conviction duly obtained, as D'Allesandro's was. Confusion in the taking of a plea does not exist simply because the presiding judge later decides that, for reasons which his invitation of a new guilty plea made obvious, he would like to have it so. As Mr. Justice Field observed nearly a century ago

When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men.

Ho Ah Kow v. Nunan, 12 Fed.Cas. 252, 255 (No. 6,546) (C.C.D.Calif.1879); see also Watts v. Indiana, 338 U.S. 49, 52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949) (Mr. Justice Frankfurter); United States v. Rumely, 345 U.S. 41, 44, 73 S.Ct. 543, 97 L.Ed. 770 (1953) (*id.*).

It is of no moment that the judge's motives were of the highest. We do not stop to inquire whether his apparent resentment over the action of the Parole Board was justified or not. It does not matter. In his famous lectures Cardozo told of "*le phénomène Magnaud*", an episode in which the tribunal of the first instance of Château-Thierry, whose members became known as "*les bons juges*", initiated a revolt against the existing order in jurisprudence and "asked themselves in every instance what in the circumstances before them a good man would wish to do, and . . . rendered judgment accordingly." The Nature of the Judicial Process 138–39 (1921). He concluded that

[w]hatever the merits or demerits of such impressionism may be, that is not the judicial process as we know it in our law.

*Id.* at 135 (footnote omitted).

■ D'Allesandro's counsel seeks to block review on two bases. The first is a claim that, although the judge had directed that D'Allesandro's letter and accompanying papers be treated as initiating a civil proceeding under 28 U.S.C. § 2255, in fact the application could as easily have been treated as one for withdrawal of a plea of guilty "to correct manifest injustice" under F.R.Crim.P. 32(d), and applications that are "arbitrarily labeled" without the benefit of counsel and on the advice of fellow inmates should not be interpreted to the detriment of the petitioner in an area of the law where such "procedural" matters are complex. The advantage to D'Allesandro in relabeling the proceeding would lie not in the fact that "[t]he concept of 'manifest injustice' gives the court somewhat more latitude to permit

withdrawal than does the showing of a due process or other fundamental violation usually required for vacation under Section 2255," 8A Moore, Federal Practice ¶ 32.07[4], at 32–108.1 (1975),[7] since even the broader standard of Rule 32(d) is not broad enough to encompass the granting of a motion to withdraw a guilty plea for no reason other than to permit a resentence not allowed by F.R. Crim.P. 35, but in supposed immunity of the action under F.R.Crim.P. 32(d) from appellate review at the Government's instance since the appeal would be a criminal appeal governed by 18 U.S.C. § 3731 rather than a civil appeal governed by 28 U.S.C. § 1291. See United States v. Lias, 173 F.2d 685 (4 Cir. 1949); United States v. Shapiro, 222 F.2d 836, 838–40 (7 Cir. 1955). As indicated, D'Allesandro, apparently guided by a jail-house lawyer, had suggested that the court treat his letter "as a formal Motion 2255, to vacate my sentence," although he also sought "whatever relief the Court may deem necessary." The judge, perhaps with the thought of avoiding the problem indicated in footnote 7, did just what D'Allesandro had asked. We see no reason to alter course at this point for the sole purpose of depriving the Government of the clear right of review which it has under the procedure that the court directed. We thus do not reach the question whether, if the application had been entertained as one under F.R.Crim.P. 32(d), the case would be appropriate for the issuance of mandamus. See United States v. Dooling, 406 F.2d 192, 198 (2 Cir.), cert. denied sub nom., Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); United States v. Weinstein, 452 F.2d 704, 712–13

(2 Cir. 1971), cert. denied sub nom., Grunberger v. United States, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); United States v. Weinstein, 511 F.2d 622, 626–627 (2 Cir. 1975), petition for certiorari filed.

D'Allesandro's other contention is that, since he has been convicted on his second plea of guilty, the double jeopardy clause of the Fifth Amendment protects him from restoration of the conviction under his first plea. He argues that the Government, in order to preserve a right of appeal, was obliged to attempt, in some way not apparent to us, "to prevent the Appellee from repleading." Apart from the fact that whatever happened here was at D'Allesandro's instance, the argument fails under the recent exposition of the double jeopardy clause in United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), and United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). *Wilson* held that reversal by an appellate court at the request of the Government would not expose a defendant to double jeopardy when, after a jury's guilty verdict, the indictment had been dismissed by the judge and correction of his alleged legal error could be achieved simply by directing the judge to enter judgment on the verdict. The same reasoning is applicable to a case where, in a § 2255 proceeding brought by the defendant, a judge erroneously sets aside a conviction on a plea of guilty,[8] since "[c]orrection of an error of law at [this] stage would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple

---

7. On the other hand, F.R.Crim.P. 32 has generally been thought to be unavailable when the defendant seeking to withdraw a guilty plea makes no claim of innocence. See United States v. Norstrand Corp., 168 F.2d 481, 482 (2 Cir. 1948); United States v. Paglia, 190 F.2d 445, 447–48 (2 Cir. 1951) (L. Hand, J.); Klingstein v. United States, 217 F.2d 711, 712–13 (4 Cir. 1954) (*per curiam*); Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247, 251 (1960) (Burger, J.); Criser v. United States, 319 F.2d 849, 850 (10 Cir. 1963) (*per*

*curiam*); Smith v. United States, 116 U.S.App. D.C. 404, 324 F.2d 436, 440 (1963), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964); United States v. Cooper, 222 F.Supp. 661, 663 (D.D.C.1963). Cf. *United States v. Harris*, 160 F.2d 507 (2 Cir. 1947).

8. Indeed a defendant may be retried under such circumstances even when the setting aside of the conviction on the guilty plea was proper. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

prosecutions." United States v. Wilson, *supra*, 420 U.S. at 352, 95 S.Ct. at 1026. Since there was no basis for setting aside D'Allesandro's conviction on his first plea of guilty, the conviction on the second plea was a nullity. Our reversal of what was done below erases that conviction and merely restores D'Allesandro's original conviction to the posture it was in when he initiated the proceeding under 28 U.S.C. § 2255. This offends no policy of the double jeopardy clause as explicated in *Wilson* and *Jenkins*.

The judgment is reversed with instructions to vacate all action taken at the hearing on November 12, 1974,[9] and to dismiss the petition.

---

9. Our reversal is not meant to imply that the Board of Parole should not take with the utmost seriousness any request by D'Allesandro, after return to prison, for a reopening of his parole determination pursuant to 28 C.F.R. Ch. 1, Pt. 2 § 2.28 (1974). The hardship of such a return after more than five months probation and D'Allesandro's record during this period are new factors to be taken into account.