# UNITED STATES *v.* JENKINS

No. 73–1513.  Argued December 9, 1974—Decided February 25, 1975

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Louis F. Claiborne,* and *Edward R. Korman.*

*James S. Carroll* argued the cause and filed a brief for respondent.

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Jenkins was indicted and charged with violating § 12 (a) of the Military Selective Service Act, 62 Stat. 622, as amended, 50 U. S. C. App. § 462 (a), for "knowingly refusing and failing to submit to induction into the armed forces of the United States." App. 3. After a bench trial, the District Court "dismissed" the indictment and "discharged" the respondent. 349 F. Supp. 1068, 1073 (EDNY 1972). The Government sought to appeal this ruling pursuant to 18 U. S. C. § 3731,[1] but the

---

[1] Title 18 U. S. C. § 3731 provides, in relevant part:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

.        .        .        .        .

"The appeal in all such cases shall be taken within thirty days

Court of Appeals for the Second Circuit dismissed the appeal "for lack of jurisdiction on the ground that the Double Jeopardy clause prohibits further prosecution." 490 F. 2d 868, 880 (1973). We granted certiorari in this case and *United States* v. *Wilson, ante,* p. 332, also decided today, to consider the application of the Double Jeopardy Clause of the Fifth Amendment to Government appeals in criminal cases. 417 U. S. 908 (1974).

I

Respondent, who had first registered with his local draft board in 1966, was classified 1–A by his local board on November 18, 1970. He was found physically fit for induction, and on February 4, 1971, the local board sent respondent an Order to Report for Induction on February 24, 1971. After consulting an attorney and a local draft counselor, respondent wrote the local board and requested Selective Service Form 150 for a conscientious objector classification. Having received no response from the local board by February 23, the day before he had been ordered to report for induction, respondent went in person to the local board to request Form 150. Although respondent did secure the desired form, local board officials were directed by Selective Service headquarters not to postpone his induction to allow him to complete and submit the conscientious objector form. Respondent did not report for induction on February 24, 1971, and he was subsequently indicted.

Respondent was arraigned on January 13, 1972, and pleaded not guilty. The parties were directed to file all pretrial motions within 45 days, but no pretrial motions

after the decision, judgment or order has been rendered and shall be diligently prosecuted.

.        .          .            .              .

"The provisions of this section shall be liberally construed to effectuate its purposes."

were filed within that period. The case was called and continued on several occasions. During this period respondent filed a motion for judgment of acquittal based, in part, on the following ground:

> "The failure of the local board to postpone the induction order pending the determination of the defendant's claim as a conscientious objector was arbitrary and contrary to law and rendered the Order to report for induction invalid. *United States* v. *Gearey*, 368 F. 2d 144 (2nd Cir. 1966)." App. 4.

In *Gearey* the Court of Appeals had interpreted the controlling Selective Service regulation [2] to require a local board to reopen a registrant's classification if it found that the registrant's conscientious objector views had ripened only after he had been notified to report for

_____

[2] 32 CFR § 1625.2 (1965):

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

The regulation had been in effect since 1955, 20 Fed. Reg. 737, and was not amended between the time *Gearey* was decided and the events leading up to respondent's indictment. The regulation was amended in 1973, 38 Fed. Reg. 731.

induction. At the time respondent was ordered to report for induction, *Gearey* remained the law of the Circuit. Two months later, however, this Court rejected *Gearey* in a decision affirming a contrary holding from another Circuit. *Ehlert* v. *United States,* 402 U. S. 99 (1971).

When the case proceeded to trial, respondent waived trial to a jury, and the case was tried to the court. At the close of the evidence, the court reserved decision in order to give the parties an opportunity to submit proposed findings. Although it does not appear from the record that either party requested the court to find the facts specially, Fed. Rule Crim. Proc. 23 (c), the court filed written findings of fact and conclusions of law, and directed that the indictment be dismissed and the respondent be discharged. The court acknowledged that respondent had failed to report for induction as ordered, 349 F. Supp., at 1070, and that under *Ehlert* the board is not required to entertain conscientious objector claims arising between notice of induction and the scheduled induction date. Nevertheless, since respondent failed to report for induction at a time when *Ehlert* had not yet been decided and *Gearey* represented the prevailing law, respondent was entitled to a postponement of induction until the board considered his conscientious objector claim. The court reasoned that it would be unfair to apply *Ehlert* to respondent:

> "This court cannot permit the criminal prosecution of the defendant under these circumstances without seriously eroding fundamental and basic equitable principles of law." 349 F. Supp., at 1073.[3]

---

[3] The District Court may have believed that respondent could not be convicted for knowingly refusing to report for induction if he had acted in the belief that the board's order was illegal under *Gearey*. There was no direct evidence that respondent relied upon *Gearey* in refusing to report for induction. Respondent called as a witness a local draft counselor whom he had contacted upon

The Government filed a timely notice of appeal[4] and argued that the District Court had incorrectly concluded that *Ehlert* was not retroactive.[5] Since this Court held long ago that the Government cannot bring an appeal in a criminal case absent an express enabling statute, *United States* v. *Sanges,* 144 U. S. 310 (1892), the Court of Appeals considered first whether petitioner's appeal was authorized by 18 U. S. C. § 3731.

The Government contended, and respondent did not dispute, that the intention of Congress in amending 18

---

receiving his notice to report for induction. The counselor would have testified as to respondent's sincerity and apparently would have touched upon the *Gearey* issue. App. 70–73. The court ruled that the counselor's testimony was inadmissible. At that time, the court regarded the effect of *Gearey* as "strictly a question of law," *id.,* at 73, but the judge apparently changed his mind after further deliberation, as was his prerogative:

"Trials will never be concluded if judgments rendered after full consideration are to be reversed because of remarks made and tentative theories advanced by a judge in the course of the trial." *United States* v. *Wain,* 162 F. 2d 60, 65 (CA2), cert. denied, 332 U. S. 764 (1947).

[4] The notice of appeal was filed within the requisite 30 days, but the Government did not file its brief until seven months later. The Court of Appeals indicated that it would have dismissed the appeal for failure to prosecute diligently, 18 U. S. C. § 3731, had respondent so requested. 490 F. 2d 868, 869 n. 2. Respondent has similarly made no such argument in this Court.

[5] By the time the Government filed its brief, the Court of Appeals had held that *Ehlert* could be applied to a registrant whose refusal to report for induction occurred while *Gearey* still represented the law of the Circuit. *United States* v. *Mercado,* 478 F. 2d 1108 (1973). The court observed, however:

"We recognize such a rule might be harsh as applied to a registrant who in fact reasonably relied in good faith on the case law or upon the knowledge that local boards in this circuit would consider a belated conscientious objection claim, and perhaps there is room for flexibility in enforcement of this rule to avoid injustice in a particular case . . . ." *Id.,* at 1111.

U. S. C. § 3731 in 1971 was to extend the Government's right to appeal to the fullest extent consonant with the Fifth Amendment.[6]   Judge Friendly, writing for the Court of Appeals, carefully reviewed the evolution of the Double Jeopardy Clause and concluded that the draftsmen "intended to import into the Constitution the common law protections much as they were described by Blackstone." 490 F. 2d, at 873. While available evidence was equivocal on whether "the crown's inability to appeal an acquittal after a trial on the merits" was incorporated in the common-law concept of double jeopardy, the majority was of the view that decisions by this Court had resolved any such ambiguity adversely to the Government. *Id.*, at 874, citing *United States* v. *Ball*, 163 U. S. 662 (1896); *Kepner* v. *United States*, 195 U. S. 100 (1904); *Fong Foo* v. *United States*, 369 U. S. 141 (1962); *United States* v. *Sisson*, 399 U. S. 267 (1970). Although the District Court had characterized its action as a dismissal of the indictment, the Court of Appeals concluded that the respondent had been acquitted since the District Court had relied upon facts developed at trial and had concluded "that the statute should not be applied to [respondent] as a matter of fact." 490 F. 2d, at 878.

Judge Lumbard dissented on two grounds. First, an appeal by the Government was permissible since the District Court had properly characterized its action as a dismissal rather than an acquittal. The District Court's decision was "essentially a legal determination construing the statute on which the indictment was based," *id.*, at 882, and not really an adjudication on the merits in the sense that it rested on facts brought out at trial. Second, even if the District Court did acquit respondent, the Double Jeopardy Clause does not stand as an absolute

---

[6] See H. R. Conf. Rep. No. 91–1768, p. 21 (1970). Cf. S. Rep. No. 91–1296 (1970).

barrier against appeals by the Government; there is a societal interest to be weighed in determining the appealability of the decision.[7]

## II

When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal. *United States* v. *Wilson, ante,* at 344–345, 352–353. When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict. To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction not be entered, but this interest of the defendant is not one that the Double Jeopardy Clause was designed to protect.

Since the Double Jeopardy Clause of the Fifth Amendment nowhere distinguishes between bench and jury trials, the principles given expression through that Clause apply to cases tried to a judge. While the protection against double jeopardy has most often been articulated

---

[7] Judge Lumbard analogized respondent's case to mistrial cases in which the " 'public's interest in fair trials designed to end in just judgments' " may be weighed. *Illinois* v. *Somerville,* 410 U. S. 458, 470 (1973). That interest, he felt, would not be served by permitting a clearly guilty defendant to go free because of an erroneous interpretation of the controlling law. 490 F. 2d, at 884. We disagree with this analysis because we think it is of critical importance whether the proceedings in the trial court terminate in a mistrial as they did in the *Somerville* line of cases, or in the defendant's favor, as they did here.

in the context of jury trials,[8] the recent decision by Congress to authorize Government appeals whenever consistent with the Double Jeopardy Clause, when combined with the increasing numbers [9] of bench trials, makes this area important though unilluminated by prior decisions of this Court.

A general finding of guilt by a judge may be analogized to a verdict of "guilty" returned by a jury. *Mulloney* v. *United States*, 79 F. 2d 566, 584 (CA1 1935), cert. denied, 296 U. S. 658 (1936). In a case tried to a jury, the distinction between the jury's verdict of guilty and the court's ruling on questions of law is easily perceived. In a bench trial, both functions are combined in the judge, and a general finding of "not guilty" may rest either on

---

[8] See, e. g., *United States* v. *Ball*, 163 U. S. 662 (1896); *Green* v. *United States*, 355 U. S. 184 (1957); *Fong Foo* v. *United States*, 369 U. S. 141 (1962). Cf. *Kepner* v. *United States*, 195 U. S. 100 (1904).

[9] 1974 Annual Report of the Director, Administrative Office of the United States Courts IX–97, Trials Completed in the United States District Courts During the Fiscal Years 1962 Through 1974:

| Fiscal year | Total | Criminal | |
| | | Non-jury | Jury |
| --- | --- | --- | --- |
| 1962 | 3,788 | 1,090 | 2,698 |
| 1963 | 3,865 | 1,159 | 2,706 |
| 1964 | 3,924 | 1,076 | 2,848 |
| 1965 | 3,872 | 1,143 | 2,729 |
| 1966 | 4,410 | 1,239 | 3,171 |
| 1967 | 4,405 | 1,345 | 3,060 |
| 1968 | 5,533 | 1,800 | 3,733 |
| 1969 | 5,563 | 1,883 | 3,680 |
| 1970 | 6,583 | 2,357 | 4,226 |
| 1971 | 7,456 | 2,923 | 4,533 |
| 1972 | 7,818 | 2,968 | 4,850 |
| 1973 | 8,571 | 2,927 | 5,644 |
| 1974 | 7,600 | 2,753 | 4,847 |

the determination of facts in favor of a defendant or on the resolution of a legal question favorably to him. If the court prepares special findings of fact, either because the Government or the defendant requested them [10] or because the judge has elected to make them *sua sponte*,[11] it may be possible upon sifting those findings to determine that the court's finding of "not guilty" is attributable to an erroneous conception of the law whereas the court has resolved against the defendant all of the factual issues necessary to support a finding of guilt under the correct legal standard. The Government argues that this is essentially what happened in this case. Brief for United States 11–14.

We are less certain than the Government, however, of the basis upon which the District Court ruled. It is, to be sure, not clear that the District Court resolved issues of fact in favor of respondent. But neither is it clear to us that the District Court, in its findings of fact and conclusions of law, expressly or even impliedly found against respondent on all the issues necessary to establish guilt under even the Government's formulation of the applicable law. The court's opinion certainly contains no general finding of guilt, and although the specific findings resolved against respondent many of the component elements of the offense, there is no finding on the statutory element of "knowledge." In light of the judge's discussion of the *Gearey* issue in his opinion, such an omission may have reflected his conclusion that the Govern-

---

[10] Federal Rule Crim. Proc. 23 (c):

*"Trial Without a Jury.*

"In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein."

[11] See, *e. g., Sullivan* v. *United States*, 348 U. S. 170, 174 (1954).

ment had failed to establish the requisite criminal intent beyond a reasonable doubt. See n. 3, *supra.*

On such a record, a determination by the Court of Appeals favorable to the Government on the merits of the retroactivity issue tendered to it by the Government would not justify a reversal with instructions to reinstate the general finding of guilt: there was no such finding, in form or substance, to reinstate. We hold today in *Wilson, supra,* that the Double Jeopardy Clause does not bar an appeal when errors of law may be corrected and the result of such correction will simply be a reinstatement of a jury's verdict of guilty or a judge's finding of guilt. But because of the uncertainty as to the basis for the District Court's action here, *Wilson* does not govern this case.

The Government suggests two possible theories, each of which would go beyond our holding in *Wilson,* for permitting an appeal even though the trial proceedings did not result in either a verdict or a finding of guilt. First, the Government suggests that "whether a new trial must follow an appeal is always a relevant consideration," but no more; the Double Jeopardy Clause is not an absolute bar in such a situation.[12] Second, at least in a bench trial setting, the Government contends that the concept of "trial" may be viewed quite broadly. If, in a bench trial, a judge has ruled in favor of the defendant at the close of the Government's case on an erroneous legal theory, the Government ought to be able to appeal; if the appeal were successful, any subsequent proceedings including, presumably, the reopening of the proceeding for the admission of additional evidence, would merely

---

[12] Brief for United States 10 n. 5, 24 n. 16. The Government was of the view that it did not have to make this broader argument in the context of this case but merely sought to preserve it. In light of our disposition of its principal argument, we proceed to this alternative ground.

be a "continuation of the first trial." [13]    Tr. of Oral Arg. 16.    This theory would also permit remanding a case to the District Court for more explicit findings.

We are unable to accept the Government's contentions. Both rest upon an aspect of the "continuing jeopardy" concept that was articulated by Mr. Justice Holmes in his dissenting opinion in *Kepner* v. *United States,* 195 U. S., at 134–137, but has never been adopted by a majority of this Court.    Because until recently appeals by the Government have been authorized by statute only in specified and limited circumstances, most of our double jeopardy holdings have come in cases where the defendant has appealed from a judgment of conviction. See, *e. g., Green* v. *United States,* 355 U. S. 184 (1957); *Trono* v. *United States,* 199 U. S. 521 (1905); *United States* v. *Ball,* 163 U. S., at 671–672.    In those few cases that have reached this Court where the appellate process was initiated by the Government following a verdict of acquittal, the Court has found the appeal barred by the Double Jeopardy Clause.    See, *e. g., Kepner* v. *United States, supra; Fong Foo* v. *United States,* 369 U. S. 141 (1962).    In those cases, where the defendants had not been adjudged guilty, the Government's appeal was not permitted since further proceedings, usually in the form of a full retrial, would have followed.    Here there was a judgment discharging the defendant, although we cannot say with assurance

---

[13] The premise apparently underlying this position is that the factfinder has not been discharged in a bench trial; unlike a jury trial, where the discharge of the jury upon returning a verdict of acquittal terminates a defendant's jeopardy, *Green* v. *United States,* 355 U. S., at 191, the judge theoretically remains available to reconvene the case, take up where he left off, and resume his duties as factfinder.  Preliminarily, it may be observed that the availability of the judge is by no means assured, as this case illustrates: the District Judge has reportedly resigned.  43 U. S. L. W. 2268 (1974).

whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause, and therefore for the determination of appealability under 18 U. S. C. § 3731, that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings. The trial, which could have resulted in a judgment of conviction, has long since terminated in respondent's favor. To subject him to any further such proceedings at this stage would violate the Double Jeopardy Clause:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ." *Green* v. *United States, supra,* at 187.

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN joins, concurring in the judgment.

I would hold that the Double Jeopardy Clause bars the Government's appeal from the ruling of this trial court in respondent's favor. See *Fong Foo* v. *United States,* 369 U. S. 141. Accordingly, I concur in the affirmance of the judgment below.