**UNITED STATES of America, Petitioner-Appellant,**

v.

**Walter BURNETTE, Defendant-Appellee.**

**No. 75–1115.**

United States Court of Appeals, Fifth Circuit.

Nov. 24, 1975.

Donald E. Walter, U. S. Atty., Paul Lynch, J. Ransdell Keene, David R. Lestage, Asst. U. S. Attys., Shreveport, La., for petitioner-appellant.

Charles N. Wooten, Lafayette, La. (Court-appointed), for defendant-appellee.

Before COLEMAN and GEE, Circuit Judges, and COX, District Judge.

GEE, Circuit Judge:

The United States appeals the granting of a judgment of acquittal[1] after a jury verdict of guilty. The charge was receiving a rifle and a pistol "in commerce" in violation of 18 U.S.C.App. § 1202(a)(1), it being undisputed that defendant Burnette was a previously-convicted felon.

The government's appeal is proper under *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). There the Supreme Court said:

We therefore conclude that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Govern-

1. Pursuant to Fed.R.Crim.P. 29(c).

ment may appeal from that ruling without running afoul of the Double Jeopardy Clause.

420 U.S., at 352–3, 95 S.Ct. at 1011. And, in *U. S. v. Jenkins*, 420 U.S. 358, 365, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the Court stated, in words which might have been written of this case:

> When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal. *United States v. Wilson*, 420 U.S. at 343, 351, 95 S.Ct. at 1022, 1026. When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict.

Should the government prevail on the basis of evidence which was *admitted* here, no second trial for this offense will be necessary: only a judgment on the verdict.[2]

 The case comes down to whether there is evidence, viewed in the light most favorable to the verdict as required by *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), to establish receipt of either gun by Burnette in the Western District of Louisiana.[3] Concluding there is, we reverse the judg-

ment of acquittal and remand for entry of judgment on the verdict.

Under the Supreme Court's construction of 18 U.S.C.App. § 1202(a)(1), the enactment is intended to forbid, inter alia, receipt of any firearm by specified classes of especially risky people, if the firearm received has previously traveled in interstate commerce. *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). This being so, it is apparent that the offense denounced is committed each time a person of the disfavored class obtains possession and control of a firearm. It is undisputed that appellee Burnette was of the class—a previously-convicted felon—and that, prior to the occasion of his apprehension, the guns involved had moved in interstate commerce. Our inquiry is therefore limited to considering whether evidence was admitted sufficient to ground a belief by the jury that beyond a reasonable doubt Burnette received at least one of the weapons at the mobile home where he was apprehended.

The jury heard testimony by the officer who arrested defendant Burnette on other charges in the Western District of Louisiana, that as he approached the bedroom where Burnette was found—he and another officer having rushed the front entrance of the mobile home involved, knocked, shouted, and taken two or three other people into custody along the way—he saw a pistol shoulder-holster lying on the bed. As he reached the door-sill, he heard the sound of a heavy, metallic object striking the floor inside. Looking toward the sound, he saw a revolver on the bedroom floor. Burnette,

---

**2.** Defendant relies on certain expressions of the district court at the hearing on his Rule 29 motion to differentiate his case from *Wilson's*. These to the effect that the United States had not produced "any evidence whatsoever" of where Burnette received the guns, are said to constitute a "fact finding that there was no evidence on the point so that a new trial, at which some evidence on the point could be introduced, would be requisite to a valid conviction. Leaving aside questions of the appropriateness of such a "finding" in a case like this, we do not so construe the court's ruling. Other expressions, such as that the govern-

ment's case ". . . falls short of that degree of proof that is required . . . ." convince us that no more than a favorable ruling in response to the fourth and fifth grounds of defendant's motion asserting insufficiency of the evidence to support the verdict was intended by the court below.

**3.** Receipt was an element of venue, provable for its determination by a preponderance of the evidence, as well as of the substantive offense and the court below ruled against the United States on both heads.

clad only in undershorts, stood inside with his hands raised. The pistol lay within three feet of Burnette, and there were no other objects on the floor in that area which could have made such a sound in falling. A rifle could be seen standing in a closet. Testimony was also received from Thornberg, Burnette's friend and companion who had been secured in the front room of the mobile home, that he had seen the two weapons for the first time at the mobile home and that he did not know who owned them. He refused to answer, on Fifth Amendment grounds, how they got there but admitted that he knew how they did and that Burnette did not bring them. He did testify, however, that Burnette had never had possession of either of them in his presence. He also testified that Burnette first came to the mobile home the afternoon or night of his arrest there and that the weapons were there before Burnette ever came there, the pistol being in a holster in the closet. There was also testimony from the officers that Burnette, on the scene of his arrest and while receiving a *Miranda* warning, observed one of them tinkering with the rifle and interrupted to exclaim, "Be careful, my rifle's loaded," and that at a later time he spontaneously claimed ownership of the pistol-holster.[4]

The jury could reasonably have believed that such evidence established, beyond a reasonable doubt, that appellee Burnette possessed the weapons on the night of the arrest and had not possessed them before arriving at the place of his arrest, the mobile home in the Western District of Louisiana. It is a legitimate inference that, to have done so, he must have received them there. *See United States v. Haley,* 500 F.2d 302 (8th Cir. 1974). Thus, the verdict rests on a solid basis of sufficient evidence and reasonable inference. 18 U.S.C.App. § 1202(a)(1)

forbids convicted felons such as Burnette from taking custody or possession of such firearms as these. The verdict must be reinstated and judgment entered upon it, with an appropriate sentence imposed.

Reversed and remanded.

COLEMAN, Circuit Judge (concurring in part and dissenting in part).

I agree with that part of the majority opinion which holds that the government appeal is proper.

For obvious reasons, I have no sympathy with gunslingers or for those who go on a fugitive status after indictment. I am aware that the jury deliberated for only thirty five minutes before convicting Burnette. Nevertheless, *on the issue of venue* I do not think the proof cleared the fence.

Under 18 U.S.C.App. Section 1202 (a)(1), Burnette could have been indicted for possessing the weapons if the prosecution could prove that the possession occurred in, or affected, interstate commerce, *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

Apparently, the available proof would not support either interstate transportation or affect on interstate commerce, so the indictment charged, and the government had to prove by a preponderance of the evidence, that "in the Lafayette Division of the Western District of Louisiana", Burnette did knowingly and unlawfully "receive" the weapons.

The weapons were there and Burnette was there, but did he receive them there?

It seems to me that *United States v. Haley,* 5 Cir., 500 F.2d 302, cited in the majority opinion, has no bearing on this case. The *Haley* Court held that venue had been waived by express stipulation. Moreover, the weapon had been stolen in

---

4. The United States also sought to introduce a later statement by Burnette that he received the pistol from someone in Lafayette. which, had it been admitted, would have been wellnigh conclusive of the issues before us. But this statement was excluded, and the government's appeal must stand or fall without aid from it. No jury has ever considered it and, because Burnette cannot be retried in the circumstances presented, none ever will.

the Western District of Missouri and thereafter found in the possession of the defendant in that same district. Obviously, under those circumstances a jury could quite reasonably infer that Haley received it there.

This, however, is not our case. The facts are entirely different.

The majority opinion relies on testimony that the weapons were in the trailer before Burnette came there, that Burnette did not bring them there, but nevertheless concludes that this supports an inference that he received them there because he was found in possession of them at that location. Possibly someone could have sent them there in order that Burnette might receive them at that place, but the majority does not engage in that speculation because there is no evidence to support it. It would be equally reasonable to surmise that Burnette received them elsewhere and then caused them to be taken to the mobile home. Burnette's reference to "my rifle" and [my] pistol holster go to ownership, not to the place of receipt.

I am compelled to the view that the government strained mightily to convert possession into receipt but that it did not prove the venue of the receipt by a preponderance of the evidence.

The District Judge thought the thread was too thin and I agree. I would affirm the judgment of the District Court.