UNITED STATES of America,
Plaintiff-Appellant,

v.

Juan Gerardo ROJAS,
Defendant-Appellee.

No. 76–3008.

United States Court of Appeals,
Ninth Circuit.

May 26, 1977.

William D. Keller, U. S. Atty., Kathryne Ann Stoltz, Asst. U. S. Atty., argued, Los Angeles, Cal., for plaintiff-appellant.

Susan A. Guberman, Nasatir, Sherman & Hirsch, argued, Los Angeles, Cal., for defendant-appellee.

Before CHAMBERS and GOODWIN, Circuit Judges, and TURRENTINE,* District Judge.

CHAMBERS, Circuit Judge:

This case presents two primary issues— whether a government appeal in a criminal case from a district court's granting of a defendant's motion for judgment of acquittal under Fed.R.Crim.P. 29(c), which overturns the jury's verdict of guilty, is barred by the Double Jeopardy Clause; and, if not, whether the district court's favorable ruling on such motion was proper. We answer both questions in the negative in this case and therefore reverse.

Defendant, a qualified tax preparer, was indicted along with two other co-defendants for 1 count of conspiracy, in violation of 18 U.S.C. § 371; 3 counts of making false claims (in the form of income tax returns) against the government, in violation of 18 U.S.C. § 287; and 2 counts of possession of stolen property (in the form of the fraudulently obtained tax refund checks), in violation of 18 U.S.C. § 641. Defendant proceeded to trial by jury alone, the other two co-defendants having pleaded guilty to one count of the indictment. The government's evidence at trial revealed a scheme whereby defendant conspired with co-defendants Lisa Brock (Lisa) and Richard Smith (Smith) and unindicted co-conspirator Darlene Kirkwood (Darlene) to submit false federal income tax returns and to fraudulently obtain, forge and cash the corresponding tax refund checks, and committed various overt acts in furtherance of this conspiracy. Darlene, who was given a deal by the government under which all charges against her would be dropped upon her successful completion of 1 year probation, provided by far the most crucial testimony for the government. Her material testimony was to the following effect.

Darlene and her friend Lisa, who previously had had her own tax return filled out by defendant, discussed with him the idea of the two women obtaining some W-2 forms and then having defendant fill them out. Thereafter, Darlene stole three W-2 forms from L.A. City Hall, and she and Lisa took them to defendant's office. According to Darlene, defendant indicated that there would be a percentage involved for his filling them out, and it was stipulated that defendant did in fact fill out these tax returns and sign his own name thereto as the tax preparer. Darlene further testified that she and Lisa, in defendant's presence, inserted imaginary spouses' names on the returns along with the name from the stolen W-2 forms. When they reached the part of the return calling for dependents, defendant simply said "Give me some names," and imaginary dependents' names accordingly were entered by defendant. The women then forged the taxpayers and imaginary spouses' signatures on the returns, again in defendant's presence. Upon completion, these fraudulent tax returns were mailed out by Darlene. Thereafter, two of the corresponding refund checks were sent to defendant's office. According to Darlene, when she picked the first check up, defendant showed her a pink slip of paper with the figure "225" on it and indicated that that was what he expected as his cut from the check.[1] The refund check was then fraudulently cashed by the two women, with the assistance of co-defendant Smith, after the women forged the taxpayer and imaginary spouse's signatures on the check. A similar procedure ensued for the

---

* The Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

1. Pink paper slips from defendant's office were introduced at trial, but this particular slip was not found. This first refund check was in the amount of $1257.26.

other refund check that was received in defendant's office.[2]

Darlene's story was shaken by defense counsel on cross and re-cross examination. Her recollection of the meetings with defendant and precisely what was said at such meetings was rather sketchy, and at times even inconsistent. Additionally, defense counsel, in an effort to critically impeach Darlene's credibility, brought out her prior conviction for shoplifting and her obvious motivation to testify favorably for the government in return for its favor to her.

The government also introduced certain exhibits found in a search of defendant's office—carbon copies of 2 of the 3 tax returns prepared from the three stolen W-2 forms, which were found among a few other items in a locked desk drawer separate from defendant's other tax return records. In addition, it was shown that the names of the taxpayers whose W-2 forms had been stolen and whose names, along with the imaginary spouses' names, were used in completing the fraudulent tax returns were missing from defendant's "Accounts receivable" ledger, even though defendant testified that he prepared these returns without being paid in advance. This ledger did contain Lisa's name for her own return as well as names pertaining to tax returns prepared both before and after the fraudulent returns involved here. At the close of the government's case-in-chief, defendant moved for judgment of acquittal under Fed. R.Crim.P. 29(a), and this motion was denied by the district court.

Defendant testified on his own behalf and painted a picture of complete innocence. According to him, there was never any discussion of the fraudulent scheme related by Darlene. The two women, who defendant believed were cousins, simply came to his office with the three W-2 forms which, though unknown to him, had been stolen by Darlene from L.A. City Hall. (Defendant already knew Lisa since he had just recently filled out her own tax return.) The women told him that one of the three W-2 forms was Darlene and her husband's, that the second was that of Darlene's cousin or neighbor, and that the third was that of Lisa's cousin or neighbor. Defendant testified that he filled out these returns for the women thinking they had the taxpayers' permission to have them prepared. No fraudulent information was given by Lisa or Darlene as far as defendant knew, and he did not provide any information to be included in the returns. According to defendant, he only saw Darlene sign what he thought was her own name on what was represented to be her return. Defendant claimed that he had no knowledge or reason to know that the W-2 forms had been stolen and were being used to produce fraudulent tax returns, and that he never discussed or indicated that he expected a percentage for any wrongdoing. Defendant further stated that the checks were to be sent to his office and that the women would pay him the preparation fee after the checks were received. With regard to the government's exhibits, defendant essentially declared that he had no established record-keeping procedures as yet.

After deliberating for 2 days, the jury returned with a verdict of guilty on all 6 counts of the indictment in which defendant was charged. Upon the jury's discharge, defendant orally moved for judgment of acquittal under Fed.R.Crim.P. 29(c), and after immediately hearing argument thereon, the district court granted the motion and thus set aside the jury's guilty verdict. The government now appeals from that action by the district court.

**2.** This second refund check, in the amount of $1098.00, was picked up at defendant's office by Lisa. After she and Darlene forged the taxpayer and imaginary spouse's signatures on the back, this check was sold to a government undercover agent.

At trial, the three individuals whose W-2 forms had been stolen testified that they each had to request an additional W-2 form from their employer; that they did not sign their names on the federal income tax returns; that they did not have the dependents indicated on the returns; and that they did not know defendant and had not authorized him to receive their refund tax checks.

The first question, which is of determinative importance to our jurisdiction, is whether the government's right to appeal in this situation is barred by the Fifth Amendment's Double Jeopardy Clause. The government's right to appeal is based on 18 U.S.C. § 3731, which has been construed to allow government criminal appeals so long as the Double Jeopardy Clause is not offended thereby.[3] *See United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). The Double Jeopardy Clause "was directed at the threat of multiple prosecutions, not at government appeals, at least where those appeals would not require a new trial." *Id.* at 342, 95 S.Ct. at 1021. Thus, it is the possibility of a second trial with its attendant "embarrassment, expense and ordeal," which the clause was designed to prevent.[4] *Id.* at 343–44, 95 S.Ct. 1013, *quoting Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *see United States v. Jenkins*, 420 U.S. 358, 365, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). This potential danger of a second trial is not present, however, in a situation such as this where the district court grants a post-trial motion for judgment of acquittal under Rule 29(c) and thereby sets aside the jury's verdict of guilty. In this situation, a successful government appeal will not result in the defendant's required subjection to a second trial, but rather will merely cause reinstatement of the jury's guilty verdict.[5] Since no further fact-finding proceedings will be necessary upon reversal and remand, the defendant's double jeopardy interests are not implicated by the appeal.[6]

The Supreme Court's most recent exposition in the Double Jeopardy area does not alter this conclusion. In *United States v. Martin Linen Supply Co.*, —— U.S. ——, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), the Court held that a district court's judgment of acquittal granted under Rule 29(c) after a deadlocked jury had been discharged and a mistrial accordingly declared is not appealable by the government under 18 U.S.C. § 3731, because such appeal would violate the Double Jeopardy Clause. In so holding, however, the Court reaffirmed the basic principles established two Terms before in *Wilson* and *Jenkins*. The *Martin Linen* de-

**3.** There of course is no question that jeopardy had already "attached" in this case at the time the jury was impaneled and sworn. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

**4.** In this regard, this court recently framed the crucial inquiry to be made in determining whether Double Jeopardy bars government appeal in the following manner: "Once jeopardy has attached, and the proceedings are resolved in favor of the defendant, and the Government then appeals, will any proceedings after appeal require a determination of further factual issues before convicting or acquitting the defendant?" *United States v. Finch*, 548 F.2d 822, 826 (9th Cir. 1976). Since this question must be answered in the negative in this case, *see* discussion *infra*, we do not view the Double Jeopardy Clause as an obstacle to the government's appeal here.

**5.** As the Supreme Court expressly stated in *United States v. Wilson, supra*, 420 U.S. at 352–53, 95 S.Ct. at 1026: "We therefore conclude that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause."

In the companion case of *United States v. Jenkins, supra*, 420 U.S. at 365, 95 S.Ct. at 1011, the Supreme Court similarly stated in dicta:

[W]here the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict.

We believe these statements clearly compel the conclusion we reach here.

**6.** Indeed, it appears that every circuit court which has considered the question has reached this same conclusion. *See United States v. Hemphill*, 544 F.2d 341 (8th Cir. 1976), *citing United States v. Donahue*, 539 F.2d 1131 (8th Cir. 1976); *United States v. Burroughs*, 537 F.2d 1156 (4th Cir. 1976); *United States v. Cravero*, 530 F.2d 666 (5th Cir. 1976); *United States v. DeGarces*, 518 F.2d 1156 (2d Cir. 1975). We thus join those courts in their positions, which we view as correct and inescapable.

cision clearly re-emphasized that it is the potential danger of multiple trials or further fact-finding proceedings which the Double Jeopardy Clause was meant to prevent,[7] and the decision was expressly limited to the "hung jury" situation,[8] where the necessity for further proceedings upon appellate reversal and remand is obvious. Therefore, we find the situation presented in *Martin Linen* distinguishable from that posed here, since reversal of the district court's judgment of acquittal in this case will not necessarily "subject the defendant to a second trial," *United States v. Wilson, supra,* 420 U.S. at 344, 95 S.Ct. at 1022, whereas in *Martin Linen* that consequence was unavoidable.[9] Accordingly, this appeal by the government is properly before us, and the merits of the district court's action must now be addressed.

Defendant's initial motion for judgment of acquittal under Rule 29(a) at the close of the government's case-in-chief was denied by the district court. After the defense presented its case, the matter was submitted to the jury upon proper instructions.[10] The jury returned with a verdict of guilty on all 6 counts of the indictment in which defendant was charged. Defendant then orally moved for judgment of acquittal under Rule 29(c), and after hearing argument from both sides, the district court granted defendant's motion and thereby set aside the jury's guilty verdict. The thrust of defendant's argument on his motion was that the government's key witness, Darlene Kirkwood, could not be believed because of the contradictions in her testimony, her demeanor, her status as an accomplice, the promises made to her in return for her testimony and her prior conviction for shoplifting. Thus, defendant argued in essence that Darlene's inconsistent recital of the facts and her faulty memory rendered her testimony incompetent as a matter of law. With her testimony deleted, according to defendant, the government's case totally faltered, leaving acquittal as the only alternative. In ruling favorably on defendant's motion, the

7. As the *Martin Linen* Court noted:
   [W]here a government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended. Thus a postverdict dismissal of an indictment after a jury rendered a guilty verdict has been held to be appealable by the United States because restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed.
   *United States v. Martin Linen Supply Co., supra,* —— U.S. at ——, 97 S.Ct. at 1354, *citing United States v. Wilson, supra.*

8. The Court's holding was limited to "the case of a government appeal from the District Court's judgment of acquittal under Rule 29(c) *where the jury failed to agree on a verdict.*" *United States v. Martin Linen Supply Co., supra,* —— U.S. at ——, 97 S.Ct. at 1354 (emphasis supplied). Thus, the Court held that "the Double Jeopardy Clause bars appeal from an acquittal entered under 29(c) after a jury mistrial . . . ." *Id.* at ——, 97 S.Ct. at 1356.

9. Our conclusion that the Double Jeopardy Clause does not bar the government's appeal here is reinforced by the fact that the Supreme Court's *Martin Linen* decision affirmed the decision of the Court of Appeals for the Fifth Circuit, which had dismissed the government's appeal on Double Jeopardy grounds. *United States v. Martin Linen Supply Co.,* 534 F.2d 585 (5th Cir. 1976). Although the Fifth Circuit thus found government appeal from a district court's judgment of acquittal properly entered under Rule 29(c) after a hopelessly deadlocked jury had been discharged violative of the Double Jeopardy Clause, the court significantly noted that a different case is presented when a jury verdict of guilty is followed by a court-directed judgment of acquittal. The Fifth Circuit unequivocally remarked that in this latter situation, "the Government admittedly can appeal." *Id.* at 588 n.6, *citing United States v. Wilson, supra; United States v. Cravero, supra* note 6. Therefore, we are convinced that *Martin Linen* does not control this case.

For the same reason, we do not view *United States v. Sanford,* 536 F.2d 871 (9th Cir. 1976) as dispositive of this case.

10. Lengthy instructions, with emphasis on the "reasonable doubt" standard, were given the jury by the district court. Included among them was an admonition for the jury not to convict defendant upon the unsupported testimony of an alleged accomplice unless it believed that unsupported testimony beyond a reasonable doubt. The jury was also specifically instructed to take note of inconsistencies or discrepancies in a witness's testimony, and to examine with caution and weigh with great care the testimony of a government witness who has received a benefit therefor.

district court stated that it "entertain[ed] a strong suspicion of guilt, as far as the defendant is concerned," but then remarked that it was "not convinced to a moral certainty under the standards, thus looking at the evidence most favorable to the Government," and on that basis set aside the jury's verdict. (RT 435).

■ The government first argues that the district court utilized an erroneous standard in ruling on defendant's Rule 29(c) motion, since it declared that it was not convinced to a "moral certainty" of defendant's guilt. While the "moral certainty" standard clearly has no applicability in this context, we may assume that the district court applied the proper standard in ruling on the motion, since we disagree with its substantive decision to grant the motion.

■ The propriety of the district court's action in this case involves a very delicate question which reveals the tension between the jury system and the district court's prerogative, as director of the trial, to grant a motion for judgment of acquittal under Rule 29(c). It is now well settled that the test for determining whether to grant such a motion "is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in light favorable to the Government." [11] *United States v. Figueroa-Paz,* 468 F.2d 1055, 1058 (9th Cir. 1972); *United States v. Nelson,* 419 F.2d 1237, 1242 (9th Cir. 1969).[12] In ruling on a Rule 29(c) motion, a district court must bear in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts,

and draw reasonable inferences from proven facts." *Id.* at 1241. Under this standard, we cannot agree with the district court's disposition of defendant's motion.

■ The government presented sufficient evidence in its case-in-chief to sustain a verdict of guilty. Although the government's key witness, Darlene, was clearly revealed to be not the most lucid or even believable witness, the jury could fairly evaluate her testimony and the effect of her impeached credibility. *See United States v. Cravero,* 530 F.2d 666 (5th Cir. 1976). Her testimony and the inferences arising therefrom, as detailed above, were sufficient to establish defendant's complicity in this fraudulent tax refund scheme. Darlene's testimony was not inherently implausible, and therefore the district court's granting of judgment of acquittal, based as we think it was on the alleged incredibility of the key government witness, invaded the province of the jury to sort through the conflicting testimony and resolve the conflicts in accordance with the "reasonable doubt" standard.[13] In sum, we reject the district court's implicit conclusion that Darlene's testimony was so "incredible or unsubstantial on its face" to warrant judgment of acquittal here. *Lyda v. United States,* 321 F.2d 788, 794–95 (9th Cir. 1963), *quoting Haakinson v. United States,* 238 F.2d 775, 779 (8th Cir. 1956). Believing that matters such as we have here should be primarily in the hands of the district court our instincts called for an affirmance (or dismissal of the appeal), but we cannot square such a course with the established authorities.

---

**11.** The district court here purportedly did view the evidence in a light most favorable to the government. While we do not dispute that aspect of the district court's decision, we believe the court erred as a matter of law in concluding that a jury could not rationally find defendant guilty beyond a reasonable doubt on the basis of the evidence presented. *See United States v. Scott,* 452 F.2d 660, 662 (9th Cir. 1972).

**12.** The test to be applied by the trial judge to a Rule 29(c) motion and by a reviewing court to his ruling thereon are substantially identical.

*United States v. Nelson, supra,* at 1241. This test, of course, is also the same as that applied by an appellate court reviewing a district court's denial of a defendant's motion for judgment of acquittal. *See United States v. Hall,* 552 F.2d 273 (9th Cir. 1977).

**13.** *See United States v. Hemphill,* 544 F.2d 341, 344 (8th Cir. 1976); *United States v. Cravero,* 530 F.2d 666, 670–71 (5th Cir. 1976); *United States v. DeGarces,* 518 F.2d 1156, 1159–60 (2d Cir. 1975).

If defendant had combined a motion for a new trial under Fed.R.Crim.P. 33 with his motion for a judgment of acquittal, the trial judge could have reached home safely by ruling in the alternative. But it is now too late to make a motion for a new trial (or to grant one) unless there be newly discovered evidence. Therefore the district court's judgment is reversed and remanded.

As of now, it is indicated that the jury's verdict should be reinstated and an appropriate sentence be imposed.